<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| MICHAEL WATSON, | : | **Hon. Stanley R. Chesler** |
| | : | |
| Petitioner, | : | Civil No. 10-1315 (SRC) |
| | : | |
| v. | : | |
| | : | |
| MICHELLE R. RICCI, et al., | : | **O P I N I O N** |
| | : | |
| Respondents. | : | |

---

**APPEARANCES:**

> MICHAEL WATSON, #449807
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner <u>pro se</u>

> LEEANN CUNNINGHAM, Special Deputy Attorney General
> ESSEX COUNTY PROSECUTOR
> 50 West Market Street
> Newark, New Jersey  07102
> Attorneys for Respondents

<u>**CHESLER, District Judge**</u>:

Michael Watson filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254

challenging a judgment in the Superior Court of New Jersey, Essex County, on April 1, 2003,

after a jury found him guilty of kidnapping, felony murder, second-degree burglary, first-degree

robbery, aggravated assault, terroristic threats, four counts of criminal restraint, possession of a

shotgun without a purchaser identification card, and possession of a firearm with the purpose of

using it unlawfully against the person of another.  Respondents filed an Answer and Petitioner

filed a Reply.  For the reasons expressed below, this Court will dismiss the Petition with prejudice and decline to issue a certificate of appealability.

## I.  BACKGROUND

In 2003, a jury found Petitioner guilty of kidnapping, felony murder, second-degree burglary, first-degree robbery, aggravated assault, terroristic threats, four counts of criminal restraint, possession of a shotgun without a purchaser identification card, and possession of a firearm with the purpose of using it unlawfully against the person of another.  By judgment of conviction entered April 1, 2003, the Law Division sentenced Petitioner to an aggregate term of 50 years in prison, with 40 years of parole ineligibility.  The pertinent facts, as recounted by the Appellate Division of the Superior Court of New Jersey, are as follows:

> The murder, armed robbery and other offenses were committed in the early morning hours of December 24, 2000, in two adjoining apartment units in Newark.  The murder victim, Kailee Moses, his fifteen-year old cousin, Elijah Moses, and Michelle Paden, resided in one apartment.  Natasha Smith resided in the other apartment with her three children.  At the time of the offenses, Natasha's brother, Fred Smith, was staying in her apartment, and Michelle Paden was visiting her.
>
> Defendant, who had dated Paden, brought Chinese food for her to Smith's apartment during the day preceding the offenses.  He also called her on the telephone at Smith's apartment sometime later that day and said:  "So this is how it's going to end?"
>
> The following morning, Kailee and Elijah heard a knock on the door to their apartment.  When Elijah opened the door, defendant, armed with a shotgun, and a masked confederate, armed with a handgun, entered the apartment.  The intruders ordered Kailee and Elijah to get on the floor, and they asked Kailee about the location of a "bookbag with some guns in it."  When Kailee said he did not know what they were talking about, the intruders started throwing things all over the apartment, apparently looking for the guns, and kicking Kailee.  They then put handcuffs on Kailee and told him to lead them to Smith's apartment, where Paden was staying.

2

After defendant and his confederate entered Smith's apartment with Kailee and Elijah, they put Kailee and Smith on the floor and Elijah in a chair. Paden was on the telephone when they entered. Defendant said, "Bitch, hang up the phone," so Paden hung up the phone. Defendant then grabbed her by the neck and put a shotgun to her head. He also kicked Kailee a few more times. Defendant and his confederate kept asking about a blue bag with guns while they were assaulting Kailee. When Kailee tried to get off the floor, defendant swung the shotgun at him and it discharged, inflicting a fatal injury. Defendant then put the shotgun to Elijah's neck, told him not to tell anyone about the shooting, and left the apartment with his confederate. Elijah, Smith and Paden all made identifications of defendant as one of the perpetrators from a photographic array shortly after the crime and identified him again in court at trial.

The State also presented testimony by an investigator in the homicide division of the Essex County Prosecutor's office, Robert Harris, that defendant gave an oral statement admitting his participation in the murder and other offenses:

> During the course of the interview, [defendant] stated that he and a person named, only named as Qua at this time, went to 322 Park Avenue to look for a bag full of guns in apartment number 5. He couldn't find the bag in apartment number 5, and he transported the two people that were in apartment number 5, Kailee Moses and Elijah Moses - excuse me, into apartment number 7 . . . where his ex-girlfriend Michelle Paden was located. He then stated that he questioned Michelle about the bag of guns in apartment number 7, and she told him there was no bag. So he got agitated, he started beating up Kailee and he hit him in the stomach with the shotgun and the shotgun went off.

In addition, defendant's girlfriend at the time of the offenses, Ayanna Young, testified that defendant called her shortly after the killing and told her "he shot someone by accident."

Defendant testified in his own defense and denied any involvement in the crimes. He also denied making inculpatory statements to Investigator Harris and Young.

3

State v. Watson, Docket No. A-56-03T4 slip op. (N.J. Super. Ct., App. Div. Oct. 7, 2004), certif. denied, 182 N.J. 428 (2005) (table)  [Dkt. 21-2 at pp. 3-6].

Petitioner appealed, and on October 7, 2004, the Appellate Division of the Superior Court of New Jersey affirmed.  See State v. Watson, Docket No. A-56-03T4 slip op. (N.J. Super. Ct., App. Div. Oct. 7, 2004).  On January 13, 2005, the New Jersey Supreme Court denied certification.  See State v. Watson, 182 N.J. 428 (2005) (table).

On April 15, 2005, Petitioner filed a petition for post-conviction relief in the Law Division.  [Dkt. 21-5 at 3.]  By order and opinion filed July 18, 2007, Superior Court Judge Joseph B. Isabella denied post-conviction relief.  [Dkt. 21-5.]  Petitioner appealed, and in an opinion filed April 8, 2009, the Appellate Division affirmed the order denying post-conviction relief.  See State v. Watson, Docket No. A-6188-06T4 slip op. (N.J. Super. Ct., App. Div., Apr. 8, 2009), certif. denied, 200 N.J. 459 (2009) (table).  On December 16, 2009, the New Jersey Supreme Court denied certification.  Id.

Petitioner executed the § 2254 Petition on February 17, 2010.  The Clerk received it on March 12, 2010.  In response to this Court's Order issued pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on May 10, 2010, Petitioner asked this Court to entertain the Petition as his all-inclusive § 2254 petition.  The Petition raises 11 grounds:

> Ground One:  THE COURT ERRED IN REFUSING THE DEFENSE MOTION TO EITHER INTRODUCE THE PRIOR SWORN STATEMENT OF FRED SMITH, WHO WAS UNAVAILABLE TO TESTIFY, OR TO ADJOURN[] TRIAL FOR THE DEFENSE TO TRY TO LOCATE SMITH.
>
> SUPPORTING FACTS:  Witness Fred Smith, gave a sworn statement which exculpa[]tes the petitioner in this incident.

4

Ground Two:  DEFENDANT WAS DEPRIVED OF HIS
CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE
PROCESS BY THE TRIAL COURT'S REFUSAL TO GRANT
HIS MOTION FOR A HEARING REGARDING THE
SUGGESTIVENESS OF THE POLICE IDENTIFICATION
PROCEDURES.

SUPPORTING FACTS:  At trial, investigators for the prosecutor
admitted that [t]he photo array he used with witness, had been
suggestive.  (5T 162-22 to 164-7).

Ground Three:  THE PROSECUTOR'S OPENING STATEMENT
WAS SO IMPROPERLY PREJUDICIAL TO DEFENDANT AS
TO REQUIRE REVERSAL.

SUPPORTING FACTS:  The prosecutor made comments during
his opening statements about his theories as to why the defendant
would break into the homes of people who knew him without
concealing his identity was because, he intimidated the victims
with a shotgun.

Ground Four:  BECAUSE THE COMMISSION OF THE
ROBBERY WAS INEXTRICABLY INTERTWINE[D] WITH
THE COURSE OF EVENTS INCLUDING THE COMMISSION
OF ALL OTHER CHARGED OFFENSES, THE COURT
EXCEEDED ITS SENTENCING DISCRETION IN ORDERING
THE SENTENCE FOR ROBBERY TO BE RUN
CONSECUTIVELY TO ALL THE OTHER TERMS IMPOSED.

SUPPORTING FACTS:  The robbery conviction was one of the
underlying felonies to felony murder.  Thus, by state law, the
sentence for robbery must be ran concurrent with the sentence for
felony murder.

Ground Five:  DEFENDANT WAS DENIED HIS FEDERAL
AND STATE CONSTITUTIONAL RIGHTS TO THE
EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON
APPEAL DUE TO THE FAILURE OF TRIAL AND
APPELLATE ATTORNEY[]S TO CHALLENGE THE TRIAL
JUDGE'S FAILURE TO INSTRUCT THE JURY AS TO
"ATTEMPT" IN CONJUNCTION WITH THE ROBBERY
INSTRUCTIONS. [COUNSEL'S SUPPLEMENTAL BRIEF
POINT-I]

Ground Six:  DEFENDANT WAS DENIED HIS FEDERAL AND HIS STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE FAILURE OF HIS TRIAL ATTORNEY TO REQUEST A PROPER VOIR DIRE OF JUROR #8 AND THE FAILURE OF HIS APPELLATE ATTORNEY TO CHALLENGE THIS ERROR ON APPEAL [COUNSEL'S MAIN BRIEF:  POINT-I].

Ground Seven:  DEFENDANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL DUE TO THE FAILURE OF HIS TRIAL AND APPELLATE ATTORNEY[]S TO CHALLENGE AN ERROR IN THE TRIAL JUDGE'S INSTRUCTIONS TO THE JURY. [POINT-II]

Ground Eight:  DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO THE RECENT DISCOVERY OF THE WHEREABOUTS OF FRED SMITH.   [POINT-III]

Ground Nine:  DEFENDANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT HIS ATTORNEY FAILED TO PRESENT AN EXCULPATORY WITNESS.  [POINT-IV]

Ground Ten:  THE TRIAL JUDGE FAILED TO DEFINE THE ELEMENT OF A CRIMINAL ATTEMPT IN HIS INSTRUCTION ON ROBBERY.  THUS, DEFENDANT'S ROBBERY AND KIDNAPPING AND FELONY MURDER AND RELATED CONVICTIONS MUST BE REVERSED BECAUSE THERE WAS NO JURY FINDING ON THE ELEMENT OF ATTEMPT.  [PRO-SE SUPPLEMENTAL BRIEF POINT-I]

Ground Eleven:  DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO RECEIVE DUE PROCESS OF LAW AND EQUAL PROTECTIONS UNDER THE LAW, AND HIS RIGHT TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE NEW JERSEY STATE CONSTITUTION ARTICLE 1 PARAGRAPH 10, AND UNDER THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE FEDERAL CONSTITUTION.

[Dkt. 1 at pp. 3-4.]

Respondents filed an Answer and a copy of the state court record, arguing that habeas

relief is not warranted.  On March 21, 2011, Watson filed a Reply to the Answer.[1]

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition as follows:

---

[1] This Court will not entertain the new grounds in Petitioner's Reply because they are time barred.  On April 19, 2010, this Court notified Petitioner that the AEDPA contains a one-year statute of limitations and bars successive petitions, asked Petitioner whether he wanted to withdraw the § 2254 Petition in order to add claims, and informed him that, if he elected to withdraw the pending Petition because it did not include all available claims, then the statute of limitations would be tolled from the date he handed the original Petition to prison officials for mailing to this Court until 45 days after the entry of the Order.  [Dkt. 2.]  See Mason v. Meyers, 208 F. 3d 414 (3d Cir. 2000).  By letter dated April 29, 2010, Petitioner "request[ed] that the § 2254 petition [ ] presently . . . pending before the court be considered as [his] one all-inclusive petition 'as is' and the court render it's Opinion based on same."  [Dkt. 3.]

Section 2244(d)(1)(A) provides that a § 2254 petition must be filed within one year from "the date on which the judgment of conviction became final."  Id.  Watson's conviction became final on April 13, 2005, upon expiration of his time to file a petition for certiorari in the Supreme Court.  See Kapral v. United States, 166 F. 3d 565, 575 (3d Cir. 1999).  The one-year statute of limitations began to run the next day on April 14, 2005, and ran for one day until it was statutorily tolled, when he filed his state petition for post-conviction relief on April 15, 2005.  See 28 U.S.C. § 2244(d)(2).  It picked up on December 17, 2009 (the day after the New Jersey Supreme Court denied certiorari on post-conviction relief), and ran for 364 days until it expired on December 15, 2010.  Because the Reply (containing new grounds) was not filed until March 21, 2011, the new grounds are time barred.  See United States v. Duffus, 174 F. 3d 333, 337-38 (3d Cir. 1999) ("[I]f the court permitted the amendment it would have acted contrary to the policy of the AEDPA, which requires courts to measure the running of the limitations periods from the date on which the judgment of conviction becomes final").

Nor would the new claims be considered timely as relating back under Rule 15(c)(2) because the new claims are distinctly separate from the claims already pled.  See Mayle v. Felix, 545 U.S. 644, 662-64 (2005); United States v. Thomas, 221 F. 3d 430, 436 (3d Cir. 2000) ("Rule 15(c)(2) applies to [habeas] petitions insofar as a District Court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief").

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA further limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, § 2254(d) limits habeas relief as follows:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's]

8

decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.  A court

must look for "the governing legal principle or principles set forth by the Supreme Court at the

time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

<u>Williams</u>, 529 U.S. at 413.  However, under § 2254(d)(1), "an *unreasonable* application of

federal law is different from an *incorrect* application of federal law." <u>Harrington</u>, 131 S. Ct. at

785 (quoting <u>Williams</u> at 410).[2]  As the Supreme Court explained,

> A state court's determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could disagree on
> the correctness of the state court's decision . . . .  Evaluating
> whether a rule application was unreasonable requires considering
> the rule's specificity.  The more general the rule, the more leeway
> courts have in reaching outcomes in case-by-case determinations.
> It is not an unreasonable application of clearly established Federal
> law for a state court to decline to apply a specific legal rule that has
> not been squarely established by [the Supreme] Court.

<u>Harrington</u>, 131 S. Ct. at 786 (citations and internal quotation marks omitted).

---

[2] <u>See also</u> <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen, 131 S. Ct. at 1398 (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Id.

### III.  DISCUSSION

A. Due Process - Right to Present Evidence (Ground One)

In Ground One, Petitioner asserts that the trial court denied his right to present exculpatory evidence by denying his request to either have the prior sworn statement of Fred Smith admitted, or to adjourn the trial to give him an opportunity to locate Smith.  Watson raised Ground One on direct appeal, arguing:

> Prior to trial the prosecutor had consistently told defense counsel that Fred Smith was in Syracuse and that Fred's sister, Natasha Smith, had a contact telephone number for him and would provide it when she came to court to testify.  However, when Natasha arrived in court on December 4, she surprised the prosecutor by telling him that she had no contact information for her brother . . . .

> Michelle Paden, Natasha Smith, and Elijah Moses all testified that the man who shot Kailee Moses had not been wearing a mask, or anything else obscuring  his face.  By contrast . . . , Fred Smith had stated to the police that the taller intruder had been wearing a mask and that the shorter intruder had been wearing a "half mask" that exposed only his mustache and the lower half of his face, and that for that reason Fred had been unable to identify him.  Defense counsel believed that Fred's testimony in this regard would be critical to his case . . .

> At the end of the day, defense counsel moved for a mistrial or, in the alternative, a week's adjournment in order to try to locate Fred Smith.  The court [denied the request.]

10

On the next trial date, defense counsel applied to the court pursuant to N.J.R.E. 804 and 806 for the admission of Fred Smith's prior statement. The court denied the application . . .

(Dkt. 20-9 at 18-20) (transcript citations omitted).

The Appellate Division rejected the claim as follows:

The fourth eyewitness to the crime, Natasha Smith's brother Fred Smith, was not produced as a witness by the State. Defense counsel indicated in colloquy with the court that Smith gave a statement to the police which indicated that the perpetrator, who Elijah, Paden and Smith's sister identified as defendant, wore a "half-mask" during the crime that exposed only his mustache and the lower half of his face and that he was unable to identify him. Defense counsel indicated that he wanted Smith to testify for the defendant because his anticipated testimony would contradict the other eyewitnesses' testimony that the person they identified as defendant did not wear any mask. He also stated that the prosecutor had represented to him before trial that Natasha Smith had a telephone number in Syracuse, New York, at which her brother could be reached, but that the prosecutor was now saying he did not know how [Smith] could be contacted. Based on these representations, defendant moved for a mistrial or an adjournment to afford him an opportunity to locate Smith and secure his attendance at the trial. Before ruling upon defendant's motion, the court and counsel had [a] colloquy with Natasha Smith regarding the whereabouts of her brother . . . .

*                    *                    *

[T]he court denied defendant's motion for a mistrial or an adjournment of the trial:

Perhaps if we knew exactly where he was, I would give you a little more leeway, but it sounded like Mr. Smith is somewhat of a drifter. They heard a couple of months ago he was in a rehab in Syracuse.

. . . .

He didn't show up for the holiday, and I don't think they have any idea where he is, and certainly the trial can't be delayed looking for someone that we have no idea if he was still alive, for that matter, so that's going to be denied.

11

The determination whether to grant an adjournment of a trial or a mistrial to afford a defendant additional time to locate a witness is committed to the sound discretion of the trial court.  See State v. Smith, 87 N.J. Super. 98, 105-106 (App. Div. 1965).  The trial court did not abuse its discretion in denying defendant's motion. Initially, we note that there is no indication Fred Smith would have testified that defendant was not one of the perpetrators.  Smith only told the police he could not identify either perpetrator and that the shorter one, who the other eyewitnesses identified as defendant and said was not wearing any mask, wore a half-mask that covered his eyes.  Consequently, even if Smith could have been produced as a witness and testified in conformity with his statement to the police, at most his testimony would have impeached the other eyewitnesses' testimony that the shorter perpetrator wore no mask. It is unlikely such testimony would have affected the verdict in light of the overwhelming evidence of defendant's guilt consisting not only of the positive identifications of defendant by the other three eyewitnesses but also defendant's inculpatory statements to his girlfriend and Investigator Harris.

In any event, there is no indication defendant could have located Fred Smith and produced him as a witness if he had been given additional time.  Smith's sister stated that she had not had any contact with him for almost a year and that the family did not know his current address or how to contact him.  Defendant failed to give any explanation why he had not undertaken to locate Smith before trial or what steps he could take that would be reasonably calculated to locate and produce him as a witness if the trial were adjourned.

After his motion for a mistrial or adjournment was denied, defendant attempted to elicit testimony from Investigator Harris that Fred Smith told him that the perpetrator who the other eyewitnesses identified as defendant had worn a half-mask.  The trial court sustained the State's objection on the ground that such evidence would be inadmissible hearsay.  On appeal. defendant argues that Fred Smith's statement to Investigator Harris was admissible under N.J.R.E. 804(b)(1)(A), which provides an exception to the hearsay rule for testimony in prior proceedings by a declarant who is unavailable as a witness . . . .  Fred Smith's oral statement to Investigator Harris was not given "at a prior trial . . . or in a hearing or deposition[.]"  Therefore, that statement was clearly inadmissible under the hearsay exception provided by N.J.R.E. 804(b)(1)(A).

12

(Dkt. 21-2 at 7-12.)

"Few rights are more fundamental than that of an accused to present witnesses in his own defense.  In the exercise of this right, the accused . . . must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence . . . .  The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest.  That testimony also was critical to Chambers' defense . . .  We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process."  Chambers v. Mississippi, 410 U.S. 284, 30 (1973).

The Supreme Court has held that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates" the Constitution.  Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).  As the Supreme Court explained in Ungar v. Sarafite, 376 U.S. at 589,

> The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

Id. at 589.

13

Here, Watson has not shown that the New Jersey courts' adjudication of his claims (regarding the denial of a continuance in order to look for Fred Smith and denial of request to admit Smith's statement to the police) was contrary to, or an unreasonable application of <u>Chambers</u>, <u>Morris</u>, <u>Ungar</u>, or other Supreme Court holdings.  <u>See also</u> <u>Ungar</u>, 376 U.S. at 591 ("[T]he fact that something is arguable does not make it unconstitutional").  Watson is not entitled to habeas relief on Ground One.

## B.  Newly Discovered Evidence (Ground Eight)

In Ground Eight, Watson asserts that he "is entitled to a new trial due to the recent discovery of the whereabouts of Fred Smith."  [Dkt. 1 at 4.]  Watson provides no factual support in his Petition and the proffer of Smith's testimony is not in the record before this Court.  Watson raised this ground on appeal from the order denying post-conviction relief.  The Public Defender's office had located Smith, and Watson argued Smith's "proposed testimony constituted newly discovered evidence sufficient to warrant a new trial." [Dkt. 21-7 at 18.] During oral argument before the Law Division, Watson's attorney did not specify what Smith's testimony would be, but she suggests that Smith's testimony at the time of the post-conviction relief argument differed from the statement Smith had given to the police.  Watson's attorney stated:

> Mr. Smith, in his statement to the police . . . indicated that both men were wearing masks.  One, a complete face mask; the other a kind of half mask.  So, of course, his testimony was very different than the other witnesses and, of course, could not be characterized as cumulative . . . .  Now it's certainly true that his current statement, he does indicate that he saw both men.  However . . . , if he had been called to testify at trial, the prior statement I would suggest would have come in under <u>Gross</u> because it was taken by the police under circumstances that pretty much guarant[ee] its reliability.  So the jury would have had . . . a statement from a witness close in time to the event saying that the two perpetrators were masked. Now this would be very important, in itself, because it would certainly add a

14

challenge to the identifications but it's particularly critical because of the nature of the defense here . . . .   The defense rested on the allegation that the - that one of the alleged victims in the matter had planned the entire robbery and that when it went bad and when someone ended up dead, that she, in order to cover the individuals that she had encouraged to perpetuate this robbery, she identified someone else - someone wholly innocent, someone wholly unrelated to the crime; that being Mr. Watson.  So that the fact that one of the witnesses gave a statement close in time to the police saying that both men were masked, and then would change that statement to indicate that he could [see] both men, would support the defense that this was a - a conspiracy . . . .

[Dkt. 20-4 at 9-11.]

In a written opinion, Law Division Judge Joseph V. Isabella rejected the claim:

Petitioner argues that he is entitled to a new trial due to the recent discovery of the whereabouts of witness Fred Smith.  During the trial, petitioner asked for a mistrial or an adjournment because Smith, one of the witnesses he intended to call, could not be found.  Petitioner claims that Fred Smith would have contradicted the testimony of Michelle Paden, Natasha Smith, and Elijah Moses regarding Petitioner's appearance during the crime.  The three witnesses for the State testified that the shooter had not been wearing any mask at all, but Fred Smith had given a statement to the police on the night of the crime stating that each of the two people who broke into the apartment was wearing some type of mask.  Petitioner claims that Fred Smith's statement is the sort of evidence that would have changed the jury's verdict . . . .

Petitioner's claim that Fred Smith's testimony would have changed the outcome of the case is unfounded; all three witnesses who testified against Petitioner had knowledge of him, and also picked his picture in a photo array shown shortly after the shooting.  It is unlikely that the jury would have ignored the eyewitness testimony of three people who were familiar with the Petitioner based on the statement of Fred Smith . . . .  If this were not enough, Petitioner admits that 'in the interview which he gave to Inv. Reilly, Mr. Smith now maintains that the shooter removed his mask, and that he recognized the shooter as a man who had been a visitor to the apartment earlier in the day." (Def.'s Br. n.2 at 12.)  While Petitioner states that Fred Smith's statement to police would still be admissible pursuant to State v. Gross, 121 N.J. 1 (1990), it would hold even less veracity given the contradictory statement given to Inv. Reilly.

Petitioner has not demonstrated that the discovery of the whereabouts of Fred Smith "would probably change the jury's verdict if a new trial were granted." State v. Carter, 85 N.J. 300, 314 (1981).  Therefore, Petitioner's request for a new trial is DENIED.

15

[Dkt. 21-5 at 12-14.]

The Appellate Division rejected the ground as follows:

Defendant . . . sought a new trial based on his recent discovery of Fred Smith's location. But, he acknowledged that Fred Smith would now contradict his earlier statement and testify that the shooter removed his mask, allowing him to recognize the shooter as a man who had visited his sister's apartment [footnote: Defendant has not included a copy of the proffer on Fred Smith's recent statement in his appendix on appeal. Our understanding of the content is based on the description provided by the judge, which defendant does not dispute.]

\*                    \*                    \*

[D]efendant did not establish a reasonable probability that the outcome of his trial would have been different if his counsel had done what he suggests . . . or that the results of a new trial with Fred Smith's testimony would probably be different . . .

The State's trial evidence not only included persuasive identifications by victims who had prior contact with defendant but also included defendant's confession acknowledging that the entire criminal episode was motivated by a quest to obtain a bag full of guns. Defendant's stated purpose for his criminal conduct was corroborated by the victims' testimony about his repeated demands for information about the bag of guns. In light of that evidence, neither a more detailed instruction on the elements of attempted theft nor cumulative evidence relevant to defendant's activities on the day before the crimes could have changed the outcome. Similarly, the testimony from Fred Smith that is offered at this juncture would not be helpful to defendant and clearly could not change th outcome of a new trial.

[Dkt. 22-2 at 5-8.]

In Herrera v. Collins, 506 U.S. 390, 400 (1993), the Supreme Court noted that, unless an

innocent person would be executed,

[c]laims . . . based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding . . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact . . .

Petitioner in this case is simply not entitled to habeas relief . . . . For he does not seek excusal of a procedural error so that he may bring an independent

16

constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect.  The fundamental miscarriage of justice exception is available only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.  We have never held that it extends to freestanding claims of actual innocence.

Herrera, 506 U.S. at 400-405 (citations and internal quotation marks omitted).[3]

Watson is not entitled to habeas relief on Ground Eight because he has not shown that the New Jersey courts' adjudication of the claim was contrary to, or an unreasonable application of Herrera or other Supreme Court precedent.  See Cantu v. Thaler, 632 F. 3d 157, 167 (5th Cir. 2011); Cress v. Palmer, 484 F. 3d 844, 854 (6th Cir. 2007) (freestanding innocence claim based on newly discovered evidence is not cognizable in non-capital case under § 2254); Zuern v. Tate, 336 F. 3d 478, 482 n.1 (6th Cir. 2003) ("The Supreme Court has held that newly discovered evidence does not constitute a freestanding ground for federal habeas relief but, rather, that the newly discovered evidence can only be reviewed as it relates to an 'independent constitutional violation occurring in the underlying state criminal proceeding'") (citation omitted) .

## C.  Due Process - Suggestive ID (Ground Two)

In Ground Two, Watson argues that he "was deprived of his constitutional rights to a fair trial and due process by the trial court's refusal to grant his motion for a hearing regarding the suggestiveness of the police identification procedures."  [Dkt. 1 at 3.]  As factual support, he states that the investigator for the prosecutor admitted at trial that the photo array he used had been suggestive.  Id.

---

[3] Because Herrera was a death penalty case, the Supreme Court assumed, without deciding "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim."  Herrera, 506 U.S. at 417.

Relying on <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972), <u>Manson v. Brathwaite</u>, 432 U.S. 98 (1977), and <u>Watkins v. Sowders</u>, 449 U.S. 339 (1981), Watson argued on direct appeal that the denial of a hearing under <u>United States v. Wade</u>, 388 U.S. 224 (1967), violated due process because he had shown some evidence of impermissible suggestiveness.  The Appellate Division rejected the argument:

> Only brief comment is required regarding defendant's argument that the trial court committed reversible error in failing to conduct a <u>Wade</u> hearing as to the admissibility of the photographic identifications of him made by Natasha Smith, Elijah and Paden.  Defendant contends that the photographic array from which these eyewitnesses identified him was suggestive because his photograph was the only one taken against a light-colored background.  We agree with the trial court's conclusion that this difference in background coloration was not sufficient to establish a prima facie case of suggestiveness of the eyewitnesses' photographic identification of defendant.  Moreover, even if the circumstances of the photographic identification had been suggestive, evidence of those identifications still would have been admissible unless the identification procedure resulted in "a very substantial likelihood of irreparable misidentification."  <u>State v. Madison</u>, 109 N.J. 223, 232 (1998) (quoting <u>Simmons v. U.S.</u>, 390 U.S. 377, 384 . . . (1968)).  In this case, the three eyewitnesses all knew defendant before the crime, they all had an excellent opportunity to observe him while he was terrorizing the occupants of the Moses and Smith apartments and killing Kailee, and they made the photographic identifications only a short time after the crime without any suggestiveness in the identification procedure.  Consequently, there was no realistic possibility, much less a "very substantial likelihood," of misidentification in this case.

[Dkt. 21-2 at 12-13] (citations omitted).

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal.  See <u>Simmons v. United States</u>, 390 U.S. 377, 383 (1968).  An identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification."  <u>Id</u> at 384.  In that case, "the witness thereafter is apt to retain in

his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." Id. at 383-84. "It is the likelihood of misidentification which violates a defendant's right to due process . . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification." Neil v. Biggers, 409 U.S. 188, 198 (1972).

The Supreme Court has held that, even if an identification procedure is unnecessarily suggestive, admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability, Manson v. Brathwaite, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining the admissibility of identification testimony." Id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2008). The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Brathwaite, 432 U.S. at 106 (quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199. Significantly, the Supreme Court has ruled that, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

Here, the New Jersey courts' admission of the in-court identifications of Watson was not contrary to, or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  See Biggers, 409 U.S. at 199. Under these circumstances, the adjudication of Petitioner's identification claims was not contrary to, or an unreasonable application of Biggers and other applicable Supreme Court jurisprudence. Petitioner is not entitled to habeas relief on this claim.

D.  Due Process - Prosecutorial Misconduct (Ground Three)

In Ground Three, Petitioner asserts that the opening statement of the prosecutor violated due process because the "prosecutor made comments . . . about his theories as to why the defendant would break into the homes of people who knew him without concealing his identity was because, he intimidated the victims with a shotgun."  [Dkt. 1 at 3.]  Watson raised this ground on direct appeal, citing the following quotation from the prosecutor's opening statement:

> Everybody knew who everybody was.  Mike [Watson] was well known.  Mike entered the apartment and he's got another person with him.  He's got a tall guy with him.  That guy had a mask on, though [Mike] did not have a mask on.  no mask.  And he was bold and brazen.  He didn't need a mask because he's got a shotgun and fear was his mask.  No one is going to say anything because he's got that shotgun . . . .
>
> You're thinking:  why didn't he wear a mask?  Like I said, that shotgun was his mask.  He was bold and he figured when he gets in there and does his business and he leaves, they are going to be too afraid to tell on him.
>
> He was wrong.  That mask didn't work.  [Michelle Paden] gave a statement and identified him by a photo array, picked him out clearly.  That's the guy.  Natasha Smith, right after the incident, gave a statement and identified Michael Watson. She also knew who he was.  She referred to him as Mike.
>
> So that shotgun, that intimidation didn't work against her either, I submit to you, and you are going to hear from her.

[Dkt. 20-9 at 29.]

The Appellate Division rejected this claim on direct appeal without discussion.

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." Id. at 642; see also Greer v. Miller, 483 U.S. 756, 765 (1987) (To violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial") (citation and internal quotation marks omitted). It is not enough to show that the prosecutor's remarks were universally condemned. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

The prosecutor's comments challenged here did not infect the trial with unfairness as to make the resulting conviction a denial of due process under Donnelly, 416 U.S. at 643. See Gooding v. Wynder, 2012 WL 207068 (3d Cir. Jan. 25, 2012). Thus, the New Jersey courts' adjudication of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief under Ground Three.

## E.  Due Process - No Instruction on Attempt (Ground Ten)

In Ground Ten, Watson argues that the robbery conviction must be reversed because "the trial judge failed to define the element of a criminal attempt in his instruction on robbery." [Dkt. 1 at 4.]

In <u>Waddington v. Sauausad</u>, 129 S. Ct. 823 (2009), the Supreme Court rejected a habeas petitioner's claim that an accomplice liability instruction violated due process.  The Court summarizes the law regarding the constitutionality of state court instructions:

> Even if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was "'a reasonable likelihood'" that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt . . . .  In making this determination, the jury instruction "may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>Estelle</u>, <u>supra</u>, at 72. Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, <u>Weeks v. Angelone</u>, 528 U.S. 225, 236 . . . (2000), the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' " <u>Estelle</u>, <u>supra</u>, at 72, 112 S.Ct. 475 (quoting <u>Cupp</u>, <u>supra</u>, at 147, 94 S.Ct. 396).

<u>Waddington</u>, 129 S.Ct. at 831 -832 (2009) (citations and internal quotation marks omitted).

"[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  <u>Estelle v McGuire</u>, 502 U.S. 62, 71-72 (1991); <u>see also</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").[4]

---

[4] As the Third Circuit explained in a § 2254 case,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses.  Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in

(continued...)

22

Here, Watson does not show that there was a reasonable likelihood that the jury applied the instructions in a way that relieved the state of its burden of proving the elements of robbery; nor does he point to a federal requirement that jury instructions must include an "attempt" instruction, or show that the absence of an attempt instructions deprived him of a defense which federal law provided to him.  See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir. 2011). Moreover, Watson cites no Supreme Court authority for the proposition that the jury instructions were contrary to or an unreasonable application of a clearly established federal right, as determined by the Supreme Court.  He is therefore not entitled to habeas relief on Ground Ten.

---

[4](...continued)
> general there is no constitutional reason why a state offense must include particular elements.
>
> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) (citations omitted).

F.  Consecutive Sentence (Ground Four)

In Ground Four, Watson argues that, because the "robbery conviction was one of the underlying felonies to felony murder . . . , by state law, the sentence for robbery must be r[u]n concurrent[ly] with the sentence for felony murder."  [Dkt. 1 at 3.]  Watson raised this issue on direct appeal, relying on State v. Louis, 117 N.J. 250, 253 (1989); State v. Yarbough, 100 N.J. 627, 643 (1985); and State v. Rogers, 124 N.J. 113, 121 (1991), and arguing that, where the crimes are committed so closely in time and place to indicate a single period of aberrant behavior, then these cases required the sentences to run concurrently.

The problem with Watson's illegal sentence claim is that, "a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment."  See Chapman v. United States, 500 U.S. 453, 465 (1991) (citations omitted); Gryger v. Burke, 334 U.S. 728, 731 (1948); Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir. 1984).[5]

_____

[5] In Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts.  Petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under
> an interpretation of the state law different from that which we
> might adopt and then set up our own  interpretation as a basis for
> declaring that due process has been denied.  We cannot treat a mere
> error of state law, if one occurred, as a denial of due process;
> otherwise, every erroneous decision by a state court on state law
> would come here as a federal constitutional question.

Because the illegal sentence ground does not assert a federal constitutional claim, this Court lacks subject matter jurisdiction over the Petition under 28 U.S.C. § 2254, and Watson has not shown that the New Jersey courts' adjudication of his illegal sentence claim was contrary to, or an unreasonable application of clearly established Supreme Court precedent.

G.  Sixth Amendment Right to Effective Assistance of Counsel (Grounds 5, 6, 7, 9, 11)

Petitioner raises ineffective assistance of counsel claims in Grounds Five (failure to request attempt instruction), Six (failure to thoroughly voir dire juror #8), Seven (failure to challenge absence of "not" in instructions), Nine (failure to present testimony of LaVerne Young), and Eleven (no deficient performance described).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

25

In analyzing alleged deficient performance, a court "begin[s] with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy,'" <u>Cullen</u>, 131 S.Ct. at 1404 (quoting <u>Strickland</u> at 689). A court "'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" <u>Cullen</u>, 131 S.Ct. at 1407 (quoting <u>Strickland</u> at 689-90). Moreover,

> the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy . . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way . . .
>
> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

<u>Strickland</u>, 466 U.S. at 687, 690-91 (citations and internal quotation marks omitted).

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id</u>. at 695. As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of

26

> showing that the decision reached would reasonably likely have
> been different absent the errors.

Strickland, 466 U.S. at 695-696.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Cullen, 131 S. Ct. at 1403 (quoting Strickland, 466 U.S. at 686 (emphasis in Cullen). Habeas review of a state court's adjudication of an ineffective assistance claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S.Ct. 1411, 1413 (2009). To obtain habeas relief, a state petitioner "must demonstrate that it was necessarily unreasonable for the [state c]ourt to conclude: (1) that [petitioner] had not overcome the strong presumption of competence; and (2) that he failed to undermine confidence in the [outcome]." Cullen, 131 S.Ct. at 1403. The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

Watson raised his ineffective assistance of counsel claims on post-conviction relief. In a written opinion, the Law Division rejected each claim. After one of the witnesses (Michelle Paden) said she recognized juror #8 and the judge conducted a voir dire, Watson argued that his counsel was deficient in failing to ask juror #8 whether the juror knew the victim, Kailee Moses. The Law Division rejected this claim: "Given the thorough questioning of the Judge and attorneys and the fact that juror #8 barely knew the witness, it does not appear that any error was made in not questioning whether he knew the victim from his association with the witness."

27

[Dkt. 21-5 at 9-10.]  The Law Division judge ruled that Watson's attorney was not deficient in

failing to object to the absence of the word "not" in the charge that the jury "may [not] conclude

that the defendant committed the crimes charged here simply because the defendant committed a

crime on another occasion," because the absence of "not" was a typographical error in the

transcript.  [Dkt. 21-5 at 11-12.]  The Law Division judge ruled that the failure to call LaVerne

Young, the mother of Watson's girlfriend, was not deficient because her testimony would have

been cumulative (where her daughter testified to the same facts) and would not in any event be

"outcome -changing." Id. at 15-16.  The Law Division found that the failure to ask the judge to

instruct on "attempt" did not satisfy either Strickland prong.  Id. at 18-19.

> The Appellate Division affirmed on the failure to show prejudice:
>
> In his petition for post-conviction relief, defendant . . . asserted ineffective
> assistance of trial and appellate counsel based on their failure to raise objections
> to . . . the voir dire and the jury charge and failure to present the testimony of
> Young's mother corroborating Young's testimony about defendant's whereabouts
> on the day before the crime . . . .
>
> Substantially for the reasons stated in the comprehensive written opinion issued
> and filed by Judge Isabella on July 18, 2007, we affirm.  We simply note our
> reasons for recognizing the soundness of the judge's conclusion that defendant did
> not establish a reasonable probability that the outcome of his trial would have
> been different if his counsel had done what he suggests . . .
>
> The State's trial evidence not only included persuasive identifications by victims
> who had prior contact with defendant but also included defendant's confession
> acknowledging that the entire criminal episode was motivated by a quest to obtain
> a bag full of guns.  Defendant's stated purpose for his criminal conduct was
> corroborated by the victims' testimony about his repeated demands for
> information about the bag of guns.  In light of that evidence, neither a more
> detailed instruction on the elements of attempted theft nor cumulative evidence
> relevant to defendant's activities on the day before the crimes could have changed
> the outcome.

[Dkt. 22-2 at 5-8] (citations omitted).

Given that overwhelming evidence of guilt, this Court finds that the New Jersey courts' rejection of Watson's ineffective assistance claims for failure to show prejudice was not contrary to, or an unreasonable application of <u>Strickland</u> and its progeny.  Thus, Watson is not entitled to habeas relief on his ineffective assistance of counsel claims.

<u>H.  Certificate of Appealability</u>

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

<b>IV.  CONCLUSION</b>

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

　　　　　　　　　　　　　s/Stanley R. Chesler
　　　　　　　　　　　　STANLEY R. CHESLER
　　　　　　　　　　　　United States District Judge

DATED:　　　January 31, 2012

29